By the Court. Duer, J.
This is a motion to set aside a report of a referee, as contrary to law and evidence.
The action is brought by the plaintiffs, as the printers and publishers of a newspaper in the state of Michigan, to recover the amount of their hill for printing an advertisement of the sale of real estate, under an execution which was issued from the circuit court of the United States for that district, upon a judgment recovered in that court, by the present defendants. The plaintiffs were employed and authorized to publish the advertisement, and to continue its publication with notices of the postponement of sale from week to week, for a period of nearly eighteen months, by the deputy marshal, in whose hands the execution had been placed for collection, and it is insisted that this employment created such a privity between the plaintiffs and defendants, as entitles the former to maintain this action. The referee, adopting this view of the case, has reported that there is due to the plaintiffs, the sum of five hundred and ten dollars, which is the amount of their hill exclusive of interest.
Upon the hearing, various objections to the report, arising *579 upon the facts as well as upon the law, were forcibly urged by the counsel for the defendants, but the only question we have found it necessary to consider, and shall determine, is the main question of law, upon which the right of the plaintiffs to recover at all, depends, namely, whether there exists such a privity of contract or of law, between them and the defendants, as can render the latter personally liable.
In considering this question, we dismiss at once the allegation that the deputy marshal who employed the plaintiffs, is to be regarded as the immediate agent of the defendants, and was rendered so by the special instructions given to him by the attorney for the defendants, in relation to the publication and continuance of the advertisement. We dismiss the allegation, not as unsound in law, but as unsupported by the evidence. The testimony of the deputy marshal in regard to his instructions, is exceedingly vague, and standing alone, would be inconclusive, and the inference that has been drawn from his testimony, is positively contradicted and shown to be groundless, by the evidence of the attorney and of the marshal himself. We cannot believe, and shall not intend, that the referee founded his report upon the truth of an allegation which is destitute of a semblance of adequate proof. We must consider the act of the deputy as the act of the marshal, and as an act performed by him, not under special directions from the defendants or their attorney, but in the discharge of a duty which the law imposed uj)on him.
In our judgment, therefore, the liability of the defendants depends solely upon the proper answer to' be given to the general question, whether the plaintiff in an execution is directly and personally responsible upon every contract which the marshal or sheriff, to whom the execution has been delivered, may find it necessary or convenient to make, in order to render the process effectual %
We have searched in vain for any direct authorities in support of the affirmative of this proposition, and certainly none such have been produced or referred to by the counsel for the plaintiffs. We think it may be very safely averred, that no adjudged case resting upon this principle, is to be found in the English *580 reports or in our own. The mere novelty of an action, it is true, is not conclusive to prove that it is not maintainable, since cases have frequently arisen, and may still be expected to arise, in which, although no precedents are found, it may be demonstrated that the remedy which is sought, ought not to be, and without a violation of principle cannot be denied ; but it must be borne in mind that it is only by such a demonstration, that the strong presumption, which arises from the total absence of precedents, can be overcome.
The argument that has been relied on in this case as supplying this demonstration may be stated in a few words. It is said that a marshal or sheriff, to whom a fi. fa. or other process has been delivered, becomes by the very act of its delivery the agent of the plaintiff in whose favor it is issued. When the plaintiff is known to the person with whom the officer deals in the course of his employment, the presumption that an exclusive credit is given to the officer may perhaps be admitted; but when the plaintiff, as in the present case, is unknown, this presumption is repelled, and the general rule of law then applies, that an unknown principal when discovered, is directly and personally liable, upon every contract made by his agent within the scope or limits of his agency.
The links in this chain of reasoning are perfectly connected, and if the truth of the premises is admitted, that of the conclusion cannot be denied; but if we do not greatly err, the argument fails in its foundation, and assumes the very position that was necessary to be proved. It assumes, that the relation of principal and agent subsists between the officer and the suitor, and this assumption, we apprehend, is not merely gratuitous, but is inconsistent with the nature of the relation which it supposes to exist.
We have always understood, and until better instructed, must continue to believe, that the relation of principal and agent, is in all cases a voluntary relation, springing from a contract, to which, as to all other contracts, the consent of the parties is essential. It is described and treated as a purely voluntary relation by all the text writers, by Paley, by Livermore, and by Judge Story, whose treatise upon the subject, although one of *581 the earliest, is perhaps the most complete and accurate of his numerous publications. As all these writers explain the relation, it is from the principal, and from the principal alone, that the agent derives his authority. It is the will of his principal that fixes the limits of his authority, regulates its exercise and determines its existence. The principal appoints, directs, controls, removes him. It is plain that these observations cannot be applied to the relation between the marshal or sheriff, and the suitors, who in the prosecution of their legal rights are constrained to employ him. As they have not the power of selection nor he the liberty of refusal, it cannot be said that this relation flows from the will of the parties. It is the creation of the law, not the result of a contract. He is a public officer, who, when he acts for individuals, acts, not by virtue of their choice or of his own agreement, but in discharge of a positive, independent duty. He is appointed by the government, or elected by the people, is removable only by the appointing power or by process of law, and unless where special instructions are given to him, it is the law, and the law alone, that defines his authority and prescribes his duties, and controls him in their discharge. When special directions are given to him, the plaintiff is, doubtless, responsible for his acts, so far as the directions are followed, and in such' cases the officer, within a limited sphere and in a restricted sense of the term, becomes the agent of the suitor; but setting aside these exceptional cases, the assertion that they are connected by the relation of principal and agent, is not simply gratuitous, but as the observations we propose to make we think will evince, is repugnant to established principles, and is contradicted by the authorities.
If this relation exists, it must exist with all its legal consequences-, for no reason has been, nor, we think, can be given for the exclusion of any. If this relation exists, the general rights, duties and responsibilities of the parties, must be the same that are admitted to flow from it in other cases. Hence, if the plaintiff in an execution, as the principal, is liable on every contract made by the officer, with a view to the execution of the process, as principal, he must be just as liable to third parties for the misconduct and the negligence of the officer, his torts and his *582 omissions in the course of the same employment. This consequence is inevitable, if the employment of the officer to execute the process, constitutes an agency in the ordinary and legal sense of the term, (Story on Agency, §§ 308 and 452, and the cases there cited ;) and according to Judge Story, this liability attaches, even where the principal, so far from having authorized, justified or participated, in the wrongful acts of the agent,, has disapproved of and condemned them. If, therefore, a marshal or sheriff seize and sell the goods of A, under an execution against B, the plaintiff, as his principal, must be immediately liable to the owner in an action of trespass or trover, although the proceeds of the sale not having been paid to him, he has derived no benefit from the act, and it is clearly proved, neither directed nor in any manner-assented to its performance, but on the contrary, as soon as it came to his knowledge, condemned ánd rejected it.
Hor can the responsibility of the plaintiff as principal be confined within these limits j he is just as liable for the acts and proceedings 'of every sub-agent, whom the marshal or deputy may choose to employ, that is of every deputy into whose hands the execution may be passed. A privity exists between a subordinate agent and the principal in all cases, where the consent of the principal, to his employment, is expressed or implied, and the law implies this consent in every case where the employment is rendered necessary by the nature of the agency, or is justified by a general usage. (Story, §§ 387, 201, 217 a.) Upon both these grounds, if a plaintiff, whose execution has been delivered to the sheriff, is to be regarded as a principal, his consent to the employment of a deputy in the service of a process, must be implied, and a reciprocal liability is the necessary consequence of the privity which is thus created. He must be jtersonally bound to compensate the sub-agent for his services, and the sub-agent is directly liable to him for any breach of duty in the course of his employment; nor is this all, where a sub-agent is employed with the consent of the principal, the responsibility of the original agent, except as to third parties, wholly ceases. (Story, 217 a, 313, 201.) Hence, if an under or deputy sheriff, embezzles or refuses to pay over the moneys which he has collected upon an execution, he is not only personally liable to the *583 plaintiff, but the sheriff is not liable at all. Considered as an agent of the plaintiff, the sheriff has discharged the whole duty which the law imposed upon .him, and. no action can he maintained against him.
It is sufficient to have stated these propositions, and it is needless to cite authorities to show that they are just as contrary to law, as to an unprejudiced mind they must .appear to he, to reason and justice. It is .settled by numerous decisions that the sheriff is responsible, and is alone responsible, for the acts of his subordinate officers, and that as against them no action founded upon a breach of duty can be maintained, except by the sheriff himself. They .are not liable either .to third parties, or to the suitors in whose immediate service they may he acting. (Morse v. Slue, 1 Ventris 238; Cameron v. Reynolds, Cowper 403; McIntyre v. Trumbull, 7 John. 35, 36, note; Tuttle v. Love, 7 Ibid. 471; Paddock v. Cameron, 8 Cow. 212; Walden v. Davison, 15 Wend. 575; Colvin v. Holbrook, 2 Comst. 126; Paley on Agency, 396; Story, § 310.) It is true that in Tuttle v. Love, an undersheriff was held to be liable to the plaintiff for moneys collected upon an execution, but it was upon an express promise of the defendant that the court placed its decision, admitting in the plainest terms, that had no such promise been proved the action could not have been sustained. In all the cases that have been cited, to which many might be added, the sole ground of the decision is, that subordinate officers, as the known agents -of the sZieriff, am accountable •to him alone as their principal, and consequently that no privity exists between them and the suitors or other persons to whom the sheriff may be responsible. They are decisions, therefore, which could not have been made, had the sheriff been considered as the original and primary agent, for upon this supposition, the privity, which is denied, must have arisen.
We do not deny, but on the contrary distinctly admit, that in every civil suit in which the sheriff is employed, a privity, and .therefore a mutual liability, does exist between him and the plaintiff, but it is a privity which the Zaw, and not the consent «of the parties, creates and defines.
It does not flow from the ordinary relation of principal and *584 agent, nor is it governed by the rules upon which the rights and liabilities of the parties in that relation usually depend. There is, indeed, a partial analogy, by which the counsel for the plaintiff and the referee have probably been misled, but the analogy fails in the material circumstances upon which the liability of a principal for the acts of his agent is reasonably founded. It is perfectly just, that he, who employs an agent, should be responsible for the acts, within the scope of his authority, of the person whom he selects, trusts and controls; but it is not just that any person should be responsible for the acts of a public officer, whom, without regard to his own wishes, the law commands, and unless he choose to abandon his rights, compels him to employ.
It is not just that he should be liable for the acts of a person whom he does not select, may not trust, and has-no power to remove. So far as by special instructions he controls his discretion, and so far as he participates in the wrongful acts of the officer, he is justly liable, and no further.
The remarks that have been made lead us necessarily to the conclusion that the referee has erred in founding his report upon the supposition of an existing privity between the parties, which entitles the.plaintiffs to maintain this action; he has erred in deciding that the defendants were in any sense parties to the contract upon which the claim of the plaintiffs is founded. It is, therefore, impossible for us to confirm his report'. We have purposely abstained from any remarks upon the nature of the plaintiffs’ demands, since we desire it to be understood, as is the fact, that the special circumstances of the case have had no influence upon our decision. The demand of the plaintiffs, extravagant as the amount seems, and unusual as it certainly is, may be perfectly reasonable and just as against the marshal or his deputy ; and if so, it is against them, or one of them, that the plaintiffs must seek their remedy. They have no right to call upon the defendants, who, as to them, are strangers.
The report must be set aside, with costs to abide the event, and the order for a reference must also be vacated, since, as the case now appears, it is manifestly proper that it should proceed to a trial in the ordinary way. If upon the trial no other *585 evidence shall be adduced than the report contains, the judge, if our opinion shall be followed, will either nonsuit the plaintiffs, or direct a verdict for the defendants ; and if we have erred, the plaintiffs will then have the opportunity of correcting the error, by an appeal to a higher tribunal.