Wright, J.
Under the pleadings and finding of the-court below, it may be assumed that the name of Calvin Wright was a forgery, as there was evidence tending to- *407 show the fact, and we can not say that the conclusion reached, in this respect, was clearly against the testimony. It is claimed, however, that his admissions, and promises to pay the note, ratified the unauthorized signature.
Had Workman, the owner of the note, taken it upon the faith of these admissions, or had he at all changed his status by reason thereof, such facts would create an estoppel, which would preclude Wright now from his defense. This appears, from most of the authorities cited in the case. But no foundation for an estoppel exists. All these statements of Wright, whatever they were, were made after Workman became the owner of the paper. Workman did not act upon them at all; he was, in no way, prejudiced by them, nor did they induce him to clo, or omit to do, any thing whatever to his disadvantage. But it is maintained that, without regard to the principle of estoppel, these admissions and promises are a ratification of the previously unauthorized act, upon the well-known maxim, Omnis ratihabitio retrotrahitur et mandato priori cequiparatur.
It is said, that a distinction exists between the classes of cases to which this principle applies. Where the original act was one merely voidable in its nature, the principal may ratify the act of his agent, although it was unauthorized. But where that act was void, as in case of a forgery, it is said no ratification can be made, independent of the principle of estoppel, to which we have alluded. Most of the authorities, cited by counsel for plaintiff in error, are of the first class, where the act was only voidable.
Bank v. Warren, 15 N. Y. 577, was where one partner, without authority, and for his own exclusive benefit, indorsed his own note in the firm name, his copartner was held bound by a subsequent promise to pay it, without any independent consideration.
In Crout v. Be Wolf, 1 R. I. 393, the third clause of the head note is, “ Where the person, whose signature is forged, promises the forger to pay the note, this amounts to ratification of the signature, and binds him.” But an examin *408 tion of the case shows, that evidence was offered to prove that plaintiff had bought the paper in consequence of what defendant said to him, and the court charged that, if before purchasing the note, plaintiff asked defendant if he should buy, and was told he might, defendant could not excuse himself on the ground of forgery. So that the case may be put upon the ground of estoppel, without relying upon the ground stated in the head note quoted.
Harper v. Decene, 10 La. An. 724, was where a clerk of a house signed the name of the house by himself as agent. Defendant, a member of the house, afterward took the note, corrected its date, and promised to pay it; and this was held a ratification to make him liable. In this case, and many like it, it may be remarked that the agent assumed to have authority, and does the act under that belief; but, in case of a forgery, there is no such authority and no such belief.
The case of Forsythe v. Day, 46 Me. 177, involves the principle of estoppel.
The cases of Bank v. Crafts, 4 Allen, 447, and Howard v. Duncan, 3 Lansing, 175, sustain the views of plaintiff in error, holding that a forgery may be ratified, independently of the principle of estoppel, and in the absence of any new consideration for the ratifying promise — a conclusion, however, to which we can not agree.
The case, in 3 Lansing, is criticised in 3 Albany Law Journal, 331.
Upon the other hand, there are authorities holding that a forgery can not be ratified. There is a fully considered case in the English Exchequer: Brook v. Hook, 3 Albany Law Jour. 255, 24 Law Times, 34. This was a case where defendant’s name was forged, and he had given a written memorandum, that he would be responsible for the bill. Chief Baron Kelly places his opinion upon the grounds: 1. That defendant’s agreement, to treat the note as his own, was in consideration that plaintiff' would not prosecute the forger; and 2. that there was no ratification, as to the act done — the signature to *409 the note was illegal and void. And though a voidable act may be ratified, it is otherwise when the act is originally, and in its inception, void. The opinion fully recognizes the proposition, that where acts or admissions alter the condition of the holder of the paper the party is estopped, but it is necessary that such a case should be made. It is further held, that cases of ratification are those where the act was pretended to have been done for, or under the authority of, the party sought to be charged, which can not be in •case of a forgery. A distinction is also made between civil acts, which may be made good by subsequent recognition, and a criminal offense, which is not capable of ratification. Baron Martin did not concur. In Woodruff & Robinson v. Monroe, 33 Md. 147, this is held: “If, in an action against an indorser of a promissory note by the bona fide holders thereof, it be shown that the indorsement was not genuine, and the defendant did not ratify or sanction it prior to the maturity of the note and its transfer to plaintiff', he is not liable. But if he adopted the note prior to its maturity, and by such adoption assisted in its negotiation, he would be estoped from setting up the forgery in a .suit by a bona fide holder. But any admissions, by the defendant, made subsequently to the maturity of the note, would not be evidence that he had authorized the indorsement of his name thereon.” See also Williams v. Bayley, L. R., 1 Appeals, H. L. 200.
In McHugh v. County of Schuylkill, 67 Penn. St. 391, the defense to a bond was forgery. The court below charged that if the obligor subsequently approved and acquiesced in the forgery or ratified it, the bond was binding on him. 'It was held that, there being no new consideration, the instruction was error; also, that a contract infected with fraud was void, not merely voidable, and confirmation without a new consideration was nudum pactum. See also Negley v. Lindsay, 67 Penn. St. 427. Daniels recognizes ■this proposition. 2 Daniels Neg. Inst., § 1352.
Upon principle we can not see how a mere promise to pay a forged note can lay the foundation for liability of the *410 maker so promising, when the promise was made, as it was, under the circumstances set forth in the record. In addition to the fact that there are no circumstances to-create an estoppel, there was no consideration for the promise. Wright received nóthing, and it is a simple nudum pactum. The consideration for a promise may be either an advantage to the promisor or a detriment to thepromisee, but here neither exists. Wright had signed a note, and when the one in suit was shown him, said he-would pay it, supposing it to be the one he had signed, lie was an ignorant man who could not read writing, though he could sign his name, and when he saw the paper, seeing that the signature spelt his name, and being unable to read the body of the instrument, he said it was all right, and he would pay it. But the promise was without that consideration which would make it a binding, contract.

Judgment affirmed.