James A. Blanchard, Ref.
[After stating the facts, and considering the question whether the counterclaim in the former suit was res adjudicata against the counterclaim, *155 and so holding]. The act of the sheriff’s deputy in permanently locking up the defendant’s premises on February 1,1883, using the sheriff’s lock and carrying away the key, and thereby excluding the defendant, its officers and employees from the premises, was utterly unwarranted by law. The warrant of attachment gave him no such express or implied power. It was merely his duty to attach and safely keep the property of the defendant, and wait for the execution. It was proper for him, in order to prevent the attached property from being spirited away, to place a watchman in charge of it for a reasonable time, pending the making of an inventory. It was his duty as soon as practicable to remove the property from the defendant’s premises.
The contention of the plaintiff that the lease of the premises was also attached, does not excuse the act of the sheriff, for in attaching such property or any interest therein the sheriff has no power to disturb the possession of the debtor.
The sheriff’s deputy says that the plaintiff told him at the time he served the attachment, and made the levy, not to remove the property from the premises, and that about two weeks thereafter the plaintiff told him to discontinue the service of the watchman, and lock up the premises as the suit was likely to be a long one, and the property was safe, and that in pursuance of such direction he withdrew his watchman and locked up the premises February 1, 1883. The watchman corroborates this, but it appears from his testimony that both the sheriff’s deputy and himself received their instructions from the brother of the plaintiff, and not from the plaintiff himself. The plaintiff’s brother had gone with them to the premises when they executed the warrant of attachment, and they assumed he was the plaintiff. No explanation has been given of his presence on that occasion, nor of his extraordinary assumption of authority in directing the sheriff’s deputy and watchman. The plaintiff says that he never authorized his brother to give such directions, and there is no evidence in the case that he *156 gave such direction to the sheriff’s deputy or watchman through his brother or otherwise.
The warrant of attachment wTas neither irregular or improvident. The process was lawful and so was the levy in pursuance of it. A motion was made to vacate the attachment and it Ayas denied. As a matter of law the sheriff is not the agent of a suitor in the execution of a lawful process, and unless special instructions are given to him the law alone defines his authority, and prescribes his duties and controls him in their discharge (Raney v. Weed, 3 Sandf. 577, 580). Doubtless, if the sheriff in the execution of a lawful process departs from the line of duty imposed by it, and does some act Avithout the scope of the authority conferred by the process, by direction of the suitor, he becomes joro tanto the agent of the suitor, and to that extent the suitor is liable as principal. The same relation and liability arise if he ratifies the unauthorized act of the sheriff after full knowledge of all the facts, for the relation between them is such that the act is capable of ratification (Farmers’ Loan & Trust Co. v. Walworth, 1 N. Y. 433).
In the case at bar we,have already found that the plaintiff did not direct the sheriff to lock up the premises. If, therefore, the plaintiff is liable for the act of the sheriff in locking them up and excluding the defendant therefrom, it must clearly appear that he deliberately ratified such act after full knowledge of all the facts and circumstances affecting his rights and interest (Nixon v. Palmer, 8 N. Y. 398, 401 ; Seymour v. Wyckoff, 10 Id. 213 ; Commercial Bank of Buffalo v. Warren, 15 Id. 577; Ahern v. Goodspeed, 72 Id. 108, 115 ; Craighead v. Peterson, Id. 279).
The question here is not merely as to the ratification of the unauthorized act of an already established and authorized agent, but relates to the ratification of the illegal and unauthorized act of one who was ■ not an agent, and who acted without precedent authority. The proof of ratification must be stronger in the latter case than in the former (Story on Agency, § 256). The proof must come from the *157 person insisting on the ratification (Seymour v. Wyckoff, 10 N. Y. 213, 224). What is the proof ? All that has been satisfactorily proved is that the'plaintiff knew that the sheriff had locked up the premises with his own lock, and kept the key at Ins own office. This came to his knowledge sometime after the fact. This knowledge of .the sheriff’s acts, while it is an essential factor of ratification, is not in itself sufficient to establish a ratification of the illegal and unauthorized act. There were other facts and circumstances affecting Iiis rights which the plaintiff did not know. It can not be presumed that he knew the sheriff had committed an illegal act in his name ; nor that he knew the relation between the sheriff and defendant, nor that he knew why the door was locked. The defendant may have consented to the locking up for aught the plaintiff knew. The defendant did not trouble itself to complain to the plaintiff. No protest of defendant was rendered the plaintiff, and it nowhere appeal’s that the defendant ever did protest. It was an easy matter for the defendant to ascertain if it cared who was responsible for locking it out of its premises, and to fasten evidence of it upon the guilty party, but it seems to have slept.
Assuming the warrant' of attachment, it is not unreasonable to suppose that the locking up of the premises was agreeable to the defendant. If the sheriff had taken the goods away the defendant’s work would have been stopped, and work could not be resumed until new machinery was obtained. As defendant had no money with which to pay the rent, it is fair to assume that it was without funds to buy new machinery. In either case, the attachment would put an end to its business, and it is by no means clear that it was not the best thing for the defendant to let the goods ; remain where they were.
There is no evidence of express ratification on the part of the plaintiff. His letter of March 3, 1883, in which he speaks of the expenses incurred in keeping the sheriff in charge of the factory is ambiguous, and by no means con- *158 elusive. A strong presumption of ratification would arise if the plaintiff had received and appropriated any fruits of the wrongful act cf the sheriff, but I can not see that he derived any benefit whatever from the act complained of.
While the question is not without difficulty and doubt, I am of opinion upon all the evidence in zthe case that the proof of eviction is not sufficient to overcome the presumption of liability of defendant under the lease, coupled with the positive testimony of the plaintiff that he did not direct nor in any way interfere with the sheriff in the attachment proceeding. As the relation of principal and agent between the plaintiff and sheriff has not been established by evidence of direction or ratification, the plea of eviction is not sustained.